**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Suzette Walker<br>2748 N. Judson Street<br>Philadelphia, PA 19132<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON SERVICES CORPORATION<br>1 Verizon Way<br>Basking Ridge, NJ, 07920<br>    and<br>VERIZON PENNSYLVANIA LLC.<br>1717 Arch Street<br>Philadelphia, PA 19103<br><br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No. 15-4031<br><br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CIVIL ACTION COMPLAINT

Plaintiff, Suzette Walker, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff initiates the instant action to redress violations by Defendants of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – 42 U.S.C.S §§ 2000a *et. seq*.), the Americans with Disabilities Act, as Amended ("ADAAA"), the Age Discrimination in Employment Act ("ADEA" -29 U.S.C. §§ 621 *et. seq.*), and the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§2601 *et. seq.*) and Plaintiff's corresponding Pennsylvania state law claims. Plaintiff was unlawfully terminated and suffered damages more fully described herein.

## II.     Jurisdiction and Venue

2. This action is initiated pursuant to 42 U.S.C. Section 1981. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

3. The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States.

4. Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III.     Parties

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult with an address as set forth above.

7. Defendants are for-profit legal entities engaged in the business of providing a wide range of cable, internet and telecommunication services internationally.

8. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership of financial controls, and other factors, Defendant Entities are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

9. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV.   Factual Background

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a fifty-seven (57) year old African American female.

12. Plaintiff was hired by Defendants on or about July 3, 1978.

13. Plaintiff has held various positions during her tenure with Defendants; however, her most recent position was as an Engineer III Specialist.

14. In her most recent position, Plaintiff was generally responsible for the design of telecommunication infrastructure for various residential and business services.

15. This was a vital role within Defendants' Network Operations Engineering Department, which role existed for a least a decade, and this role (and corresponding job responsibilities) continue to be performed in the department where Plaintiff previously worked.

16. In total, Plaintiff worked for Defendants for over thirty-six (36) years before she was subject to a purported reduction in force (*hereinafter* the "RIF") on or about April 23, 2015.

17. Defendants informed Plaintiff that her position was being eliminated because the company was going in a different direction and/or the focus of the company is changing.

18. However, Plaintiff worked at a location (900 Race Street, Philadelphia PA) with six (6) other people, all of whom were non black employees, and were not selected for this RIF.

19. In fact, in or about May or June of 2014 (the second quarter of that year), Defendants brought in a Caucasian individual, David Perry, to perform the same/similar job responsibilities as Plaintiff.

20. The other six (6) individuals in Plaintiff's Department at her same office location were as follows: Anthony Portolese (Caucasian); Joseph Hui (Asian), Steven Murphy (Caucasian), Thomas Hodge (Caucasian), Maria Cesare (Caucasian) and David Perry (Caucasian).

21. Plaintiff had more experience within the engineering department than many of these six (6) individuals; for example, Cesare only had 4 years in the engineering department with Defendants; Perry was an outside foreman and wasn't within engineering previously; and Portolese had only been in engineering for approximately six (6) years.

22. Plaintiff had the most seniority of anyone within her department at the 900 Race Street Location, and had been with the engineering Department for at least 30 years.

23. Defendants allege that performance was a criterion used to assess individuals selected for the RIF.

24. However, Plaintiff's most recent performance evaluation (for 2014) reflects that Defendants' management found her to be performing at a level of "sustained performance meeting objectives, requirements and expectations and periodically exceeding them."

25. Shortly before Plaintiff's RIF, her performance was so stellar that she received a 3% raise, and a significant bonus.

26. Plaintiff had no discipline such that this would have impacted her ability to remain with the company in comparison to her Caucasian peers.

27. In addition, despite that the company was "going in a different direction," Plaintiff's job functions were absorbed equally by Joe Scelsa (Caucasian) and Anthony Portolese (Caucasian) who held the same title as Plaintiff in the engineering department.

28. Steve Murphy (Caucasian) working in Plaintiff's department, at the same location, was admonished for poor performance, and actually had some of his job responsibilities removed which were provided to Plaintiff and another employee in or about the Fall of 2014; yet this individual retained his job over Plaintiff.

29. Joe Scelsa (Caucasian) and Ernest Padovani (Caucasian), both holding the same title as Plaintiff within the engineering department, were dressed down for performance based reasons, yet they retained their positions.

30. During Plaintiff's employment, and within her department, management scrutinized her time and attendance differently than that of her non-black peers. Defendants' management kept a watchful eye over Plaintiff's lunch breaks, and working time, whereas various Caucasian department peers would leave the workplace freely and take well over normal break periods without any type of scrutiny.

31. In addition, at or about the time Plaintiff was subject to a RIF, Defendants RIF'd one black employee, Deidre Johns, within the engineering department who held the position as "engineering consultant"; despite that Ms. Johns' position was purportedly "laid off," Defendants filled the position with a Caucasian male employee by the name of Matt Kehr.

32. Within Plaintiff's organization, Plaintiff is aware that a Caucasian employee in 2014 had been subject to a RIF (Edward McIntosh), however, Defendants immediately found another position for him within the company (in a completely different department – as an Engineering III Specialist) and therefore, this individual's jobs with Defendants was not otherwise impacted.

33. Despite availabilities within the engineering department, which postings are available for viewing, and Plaintiff's efforts to find another job within the company, she has not been successful (despite her tenure and positive work performance history within the company).

**Count I**
**Violations of 42 U.S.C. Section 1981**
**- Racial Discrimination –**

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff believes Defendants committed violations of 42 U.S.C. Section 1981 for terminating her based on race, where Defendants blatantly hired and retained Caucasian individuals who were either a.) not as qualified as Plaintiff or b.) more properly suited for any purported RIF, based on performance or other objective measurable criterion.

36. Plaintiff's termination therefore constitutes unlawful discrimination under 42 U.S.C. Section 1981.

**Count II**
**Violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII")**
**- Racial Discrimination –**

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff believes Defendants committed violations of Title VII for terminating her based on race, where Defendants blatantly hired and retained Caucasian individuals who were either a.) not as qualified as Plaintiff or b.) more properly suited for any purported RIF, based on performance or other objective measurable criterion.

Plaintiff's termination.

39. Plaintiff's termination therefore constitutes unlawful discrimination under 42 U.S.C. Section 1981.

## Count III
## Violations of the Age Discrimination in Employment Act ("ADEA")
## - Age Discrimination –

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff is an individual over the age of forty (40), and was fully qualified to perform the functions of her job (and did so with positive feedback from management for many years).

42. However, Defendants hired and retained substantially younger candidates to fulfill her job duties, while selecting Plaintiff for a lay off instead of these aforementioned younger employees (despite Plaintiff's lack of discipline, tenure and track record for positive performance).

43. Plaintiff therefore believes Defendants committed violations of ADEA by using her age as a determinative factor in its decision to select her for a lay off.

44. Plaintiff properly exhausted her administrative remedies to proceed with her ADEA claims, as she timely filed a charge of discrimination with the EEOC, filed the instant claims within 90 days of receiving notice of her right to sue.

7

## Count IV
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### - Disability Discrimination/Retaliation –

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. During Plaintiff's employment with Defendants, she Plaintiff suffered from varying disabilities, including but not limited to a shoulder injury beginning in or about April of 2013, which injury required surgery, ongoing treatment and therapy.

47. During all relevant times *herein*, Plaintiff's shoulder injury substantially limited her ability to perform various major life activities, including but not limited to working, lifting, and performing certain manual tasks.

48. Due to Plaintiff's shoulder injury, she requested reasonable accommodations in the form of time off from work (for doctors' appointments related to the injury, surgery and recovery time).

49. Plaintiff was out of work for her shoulder injury from on or about April 26, 2013 through on or about July 15, 2013.

50. During the time that Plaintiff was out on leave, and providing periodic updates to her employer, including that she may need to work on a part time basis until her shoulder injury subsided, Plaintiff was made aware that her manager was threatening that she either return full time or not at all.

51. Plaintiff was also made aware that her health problems were raised during team meetings, including inquiries and concerns by management respecting Plaintiff's recovery time and inability to return to work in prompt fashion.

52. Plaintiff believes Defendants committed violations of ADA by selecting her as a lay off candidate because of her then existing health problems and/or in retaliation for requesting medical accommodations (versus others who did not).

53. Plaintiff properly exhausted her administrative remedies to proceed with her ADA claims, as she timely filed a charge of discrimination with the EEOC, filed the instant claims within 90 days of receiving notice of her right to sue.

### Count V
### Violations of the Family and Medical Leave Act ("FMLA")
### - Retaliation –

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(a)(i)(ii).

56. Plaintiff requested leave from Defendants, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

57. Plaintiff had at least 1,250 hours of service with the Defendants during her last full year of employment.

58. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

59. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on an intermittent or block basis.

60. Plaintiff took FMLA-qualifying leave from on or about April 26, 2013 through on or about July 15, 2013.

61. Although Defendant allowed Plaintiff to return to work following her FMLA leave, Plaintiff was then selected for a lay-off despite an unblemished record, positive work performance, while others who had not recently taken FMLA leave were not selected for the lay off.

62. Therefore, Plaintiff believes that her FMLA leave was a motivating factor in their decision to select her for a lay off, verses other individuals within her department.

### Count VI
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### Racial Discrimination, Age Discrimination, Disability Discrimination/Retaliation

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full. Plaintiff re-asserts and re-alleges those facts set forth above with respect to Counts I through IV, which also constitute violations of the PHRA.

64. Plaintiff has properly exhausted her administrative remedies in order to proceed with her PHRA claims, as she properly dual filed her EEOC charge with the Pennsylvania Human Relations Commission, and waited one full year thereafter before proceeding with her PHRA claims in state or federal court.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded punitive damages, and/or liquidated as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress damages);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: */s Christine E. Burke*

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 31, 2016