IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUZETTE WALKER                  :              CIVIL ACTION
                                :
        v.                      :
                                :
VERIZON PENNSYLVANIA LLC        :              NO. 15-4031


MEMORANDUM

Bartle, J.                                   August 25, 2017

        Before the court are the motions of defendant Verizon
Pennsylvania LLC for judgment as a matter of law and a new trial
pursuant to Rules 50(b) and 59 of the Federal Rules of Civil
Procedure as well as the motion of plaintiff Suzette Walker for
liquidated damages and prejudgment interest.  The court also has
before it the petition and supplemental petition of the
plaintiff for attorneys' fees and costs.

        This is an employment discrimination and retaliation
action brought by Walker against her former employer, Verizon,
under federal and state law.  On May 25, 2017, after a five-day
trial,[1] the jury returned a verdict in favor of the plaintiff on
her claim of age discrimination in violation of the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621
et seq., and the Pennsylvania Human Relations Act ("PHRA"),
43 Pa. Stat. §§ 951 et seq., as well as her claim of medical

_____
1.  Trial consisted of 1 day of jury selection, 2.5 days of
testimony, and 1.5 days of deliberation.

leave retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. The jury also found that Walker had not proven her claim of disability retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. and the PHRA.[2] That same day, the court entered judgment in favor of the plaintiff and against the defendant in the amount of $454,000.

## I.

We must view the evidence in the light most favorable to the plaintiff, the verdict winner. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). On April 25, 2015, Walker was terminated by Verizon as part of a company-wide reduction in force. She was fifty-six years old at the time. She had been employed by Verizon for more than thirty-six years and spent thirty-five of those years in the engineering department. During the course of her employment, Walker held various roles, including senior clerk, staff clerk, drafter, assignment technician, DSO coordinator, supervisor of network engineering, engineering III specialist: conduit highway, and engineering III specialist: turf engineer.

---

2. Walker also originally filed claims of race and disability discrimination under state and federal law but chose not to pursue those claims at trial.

At the time of the reduction in force, Walker was a member of the design engineering team and reported to Brian Magee. She had begun working under Magee in 2012 and held two different engineering III specialist positions while working under him -- one on the conduit highway[3] and one as a turf engineer.

Walker held the conduit highway position from late 2012 until April 2014. Prior to this period, Walker had experience working with conduit. She had previously designed prints and posted to permanent records alongside conduit engineers while she was a drafter. In addition, as a supervisor, she had supervised the individuals who drafted conduit plats, trained individuals on the placement and drafting of conduit work, and understood Verizon's "One Call System." As a member of the conduit highway team, Walker spent thirty percent of her time on administrative tasks and seventy percent of her time on conduit design, including surveying, researching, investigating, and contacting others involved in the conduit design.

While she was in this role, Walker took approximately 2.5 months of FMLA leave from April 26, 2013 to July 14, 2013.

---

3. "Conduit highway" refers to the network of plastic pipes buried underground across the City of Philadelphia. Verizon runs its cables inside of the conduit pipes.

She thereafter returned to work but worked only half-days
through September 2013.

On August 5, 2013, approximately three weeks after
returning from FMLA leave, Walker had a formal mid-year
performance review with Magee.  In a section marked "Manager
Performance Summary" on her performance evaluation, Magee wrote:

> Suzette [Walker] was moved to
> Conduit/Highway in the first half of the
> year due to existing knowledge of conduit
> and the City Permit process.  GPIS review
> has been a positive transition, but conduit
> design has been hard to transition.  <u>Suzette
> has missed time due to an injury, which has
> made the transition difficult</u>.  The conduit
> area is still setup for the former Conduit
> Engineer and I have received complaints
> about the conduit mailbox being full.  We
> are not where the Conduit/Highway Team needs
> to be at this time.

(Emphasis added).  As stated above, Walker had been out on FMLA
leave for nearly 2.5 months and had only been at work on a
part-time schedule for approximately three weeks at the time of
her mid-year performance evaluation.  Nevertheless, Magee
determined that her FMLA leave "ha[d] made the transition
difficult."

In February 2014, Magee gave Walker her 2013 year-end
performance review.  The possible scores were Leading,
Performing, Developing, or New.  Magee assigned Walker the score
of "Developing."  Leading was the top score and was rarely
given.  It was reserved for employees who had sustained

-4-

performance above their objectives, requirements, and expectations. Performing was the score that most employees received. It indicated that the employee had met or periodically exceeded his or her objectives, requirements, and expectations. On the other hand, a Developing score signified that the employee had not met his or her objectives, requirements, and expectations and that improvement was needed. New was given to employees who had had such a short tenure in their positions that they could not be properly evaluated. With the exception of her Developing score in 2013, Walker had otherwise always received a score of Performing.

In April 2014, Magee transferred Walker to the position of engineering III specialist: turf engineer. As a turf engineer, Walker was responsible for geographic areas in and around Philadelphia including Baldwin, Davenport, Waverly, Germantown, Chestnut Hill, and Ivy Ridge. In July 2014, the Poplar geographic area was also added to her turf because a co-worker had struggled with this area. The turf engineer job required Walker to use high bandwidth. She had previously worked with high bandwidth in her roles as a drafter, assignment technician, and supervisor.

In her 2014 mid-year review, Magee wrote:

Suzette [Walker] your numbers look good
considering your time in the Turf. Take
ownership of your Turf and learn as much as

-5-

> you can during the remainder of this year on
> [high bandwidth].  If you can get your Fac
> Verification under 8, you will be making a
> big contribution to the Team.

The Fac Verification score measured the speed with which employees completed their high bandwidth jobs.  This was the most important aspect of a turf engineer's job.  The performance evaluation stated that Walker's Fac Verification score was 10.3, which was much better than the district average score of 18.2.

In her 2014 year-end review, Walker received a score of Performing.  Walker had reduced her Fac Verification score to 8.4, which was better than the team average of 12.7.  In the year-end review, Magee wrote:

> Suzette [Walker] continued to grow into the
> Turf role in 2014.  She took the [high
> bandwidth] focus and moved her facility
> verification number to metric.  Suzette
> utilizes and manages the SOW Contractors
> well, but would benefit from completing more
> of the [high bandwidth] surveys herself.
> Also greater focus on the end product of the
> Contractors' product is necessary.

Although Magee expressed concern about Walker's reliance on contractors, Magee expected his turf engineers to function as project managers and use contractors to get more work done.

In March 2015, Verizon instructed Magee and another manager, Carl Gross, that between the two of them, they had to select one person to terminate as part of a reduction in force. Like Magee, Gross managed a team of engineering specialists.

Magee and Gross were asked to "rate and rank" their team members before determining whom to terminate.  Managers were trained on how to participate in the rate and rank process.  The rate and rank protocol required managers to evaluate the performance of their team members during the previous two years.  Thus, with respect to the 2015 reduction in force, Magee and Gross were expected to evaluate the 2013 and 2014 performance of each of the persons they supervised.  The managers, with the assistance of Verizon's human resources department, were required to rate each employee's primary skills, technical knowledge, "credo"[4], corrective action, and any other relevant factors on a scale between one and five.  Employees also received points for their 2013 and 2014 performance evaluation scores.  A score of Developing received one point in the rate and rank while a score of Performing received three points.  According to Verizon's formal protocols, which were sent to Magee and Gross in March 2015, only the person with the lowest score in the rate and rank could be terminated.

Magee and Gross, however, did not engage in this formal rate and rank process to make their termination decision.  Instead, they spoke by telephone and orally agreed to select

4.  Verizon used the term "credo" to refer to an employee's ability to handle customer service in a professional and cost-effective manner.

Walker for termination.  Magee then contrived a rate and rank

that justified his decision to fire her.[5]  In that rate and rank,

Walker received thirteen points, the lowest score among the

members of Magee's team.  With respect to her 2013 performance

evaluation, Walker received only one point because her 2013

score was Developing.  In addition, as a result of Magee's

input, the rate and rank form stated that Walker "received a

D[eveloping] rating in 2013 as she hadn't learned the core

engineering role as quickly as expected and was more

administrative than proficient in the engineering role."[6]

        Three members of Magee's team were between twelve and

twenty-six years younger than Walker.  Like Walker, the employee

twelve years younger than she had received a Developing rating

in 2013.  However, unlike Walker, the younger employee had not

taken FMLA leave in 2013.  That employee received fifteen points

on the rate and rank compared to Walker's thirteen points.

Walker and this younger employee had the two lowest scores on

the rate and rank.  If Magee had not assigned Walker a score of

---

5.  Gross admitted at trial that he never did a rate and rank of
his employees, despite being required to do so.  Instead, he
came up with his own process for assessing team members.

6.  Although Magee testified that the human resources department
was responsible for this comment on the rate and rank, Verizon's
manager of human resources, Melissa Parker, testified that she
would not have added this comment without input from Magee.  A
reasonable jury could believe that Magee was the source of this
comment.

Developing in 2013, the year that she took FMLA leave, Walker would have received two additional points on the rate and rank, giving her the same score as that younger employee.

In addition, unlike Walker, the younger employee was subject to a formal performance improvement plan corrective action as a result of his poor performance. Nonetheless, Magee failed to take this corrective action into account on the rate and rank form despite being required to do so. If Magee had done so, the younger employee would have lost three points. This would have left him with a lower score than Walker, who had never been placed on a performance improvement plan.[7] Under Verizon's directive, only the person with the lowest score could be terminated as a part of the 2015 reduction in force.

After a five-day trial, the jury returned its verdict on May 25, 2017. Although it did not find for Walker on her claim of disability retaliation, the jury found that Verizon had committed age discrimination and medical leave retaliation. It awarded $188,000 in back pay damages, $256,000 in front pay damages, and $10,000 in pain and suffering damages against Verizon in favor of Walker. The court entered judgment accordingly.

---

7. Walker was never subject to any corrective action, notices, or other discipline.

We begin with the renewed motion of defendant Verizon for judgment as a matter of law.[8]  Verizon moved orally for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure at the close of evidence in Walker's case.[9]  The court denied the motion.  Verizon has now renewed its motion for judgment as a matter of law pursuant to Rule 50(b).[10]

---

8.  In the brief accompanying its motion, Verizon originally argued that Walker was not entitled to pain and suffering damages.  It has since withdrawn this basis for relief.  Verizon does not otherwise challenge the amount of damages awarded to Walker by the jury.

9.  Rule 50(a) provides:

> (1) In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>> (A) resolve the issue against the party; and
>>
>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

10.  Rule 50(b) states:

The defendant is entitled to relief under Rule 50(b) only if the plaintiff "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for [the plaintiff] on that issue."  See Reeves, 530 U.S. at 149.  This form of relief is "granted sparingly" and reserved only for those cases "where 'the record is critically deficient of the minimum quantum of evidence' in support of the verdict."  See Eshelman v. Agere Sys., 554 F.3d 426, 433 (3d Cir. 2009) (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).  "The question is not whether there is literally no evidence supporting the

---

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment -- or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged -- the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.  In ruling on the renewed motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Id. (quoting Gomez, 71 F.3d at 1083).

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record[,] . . . . the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves, 530 U.S. at 150-51. The court is required to "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 150-51 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The jury found in favor of Walker on two of her claims: FMLA retaliation and age discrimination. She offered circumstantial evidence in support of both claims. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After the defendant "articulate[s] some legitimate, nondiscriminatory reason" for its termination of the plaintiff, the plaintiff has the burden to "point to some evidence, direct or circumstantial, from which a factfinder

could reasonably . . . disbelieve [the employer's] articulated legitimate reasons." See Lichtenstein, 691 F.3d at 302 (quoting McDonnell Douglas, 411 U.S. at 802; Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

First, as to Walker's FMLA retaliation claim, the FMLA "entitle[s] employees to take reasonable leave for medical reasons" and prohibits discharging employees in retaliation for taking medical leave. See id. at 300-01 (citing 29 U.S.C. §§ 2601(b)(2), 2615(a)). Employers may not consider an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions or disciplinary actions." See id. at 301 (emphasis added) (quoting 29 C.F.R. § 825.220(c)). In order to prevail on her FMLA retaliation claim, Walker had to prove that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Id. at 301-02. Here, Verizon does not dispute that Walker proved the first two elements. Walker took FMLA leave from April 26, 2013 to July 14, 2013 and was terminated from her employment on April 25, 2015.

Verizon argues that Walker did not meet her burden to prove a causal connection between her termination and her FMLA leave. In proving a causal connection, the plaintiff "must point to evidence sufficient to create an inference that a

-13-

causative link exists between her FMLA leave and her termination." See id. at 307. Verizon claims that Walker could prove a causal link only by either producing evidence of a temporal connection between her termination and her FMLA leave or showing that she was the victim of ongoing antagonism. However, our Court of Appeals has explained that "[w]here the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference'" of a causal link. See id. (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). In this regard, the plaintiff can rely on evidence of "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." LeBoon, 503 F.3d at 232-33.

Moreover, Walker pursued a mixed-motive theory on her FMLA retaliation claim. Under this theory, Walker was merely required to prove that her taking of FMLA leave was a motivating factor in her termination. "[A]n employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." Lichtenstein, 691 F.3d at 301. Rather, a plaintiff may prevail on a FMLA retaliation claim by showing that the taking of FMLA leave was a negative

-14-

factor considered by the employer in her termination.  See id. (citing 29 C.F.R. § 825.220(c)); Egan v. Del. River Port Auth., 851 F.3d 263, 274 (3d Cir. 2017).  Verizon did not object to the jury instruction on the mixed-motive test at trial and cannot now argue that a different standard was appropriate.

There was more than sufficient evidence from which a reasonable jury could find that Walker's taking of FMLA leave was causally linked to Verizon's decision to terminate her.  In terminating Walker, Verizon assigned only one out of five possible points on the rate and rank form to Walker because of her Developing score in 2013.  A reasonable jury could have found that Magee gave Walker that Developing score in 2013 because of her FMLA leave.  A mere three weeks after Walker had returned from 2.5 months of FMLA leave, Magee wrote in Walker's 2013 mid-year review that "Suzette [Walker] has missed time due to an injury, which has made the transition difficult."  It is apparent that Magee considered Walker's FMLA leave to be a negative factor in her mid-year review.  It was reasonable for the jury to discredit any testimony by Magee to the contrary.

The jury could have also reasonably found that Magee took Walker's FMLA leave into account when he conducted her 2013 year-end review.  His mid-year concerns about Walker's FMLA leave were incorporated into the 2013 year-end review.  Further, in justifying his decision to fire Walker in 2015 on the rate

-15-

and rank form, Magee emphasized that Walker was slow to learn her job responsibilities in 2013. He explained that Walker had "received a D[eveloping] rating in 2013, as she hadn't learned the core engineering role as quickly as expected." A reasonable jury could infer that Magee decided to fire Walker in 2015 because she had not "quickly" learned her job responsibilities as a result of her 2013 FMLA leave.

Although Magee testified that he made his decision to terminate Walker before completing the rate and rank paperwork, a reasonable jury did not have to credit this testimony. However, even if the jury believed that Magee had selected Walker for the reduction in force prior to completing the rate and rank form, his comments on the rate and rank form are evidence of the reasons that he had in mind in selecting her for termination. It is apparent from those comments that Magee took into account Walker's slow transition into her role in 2013 when he selected her for termination.

Verizon does not dispute that the employee with the second-lowest score in the rate and rank did not take FMLA leave during the relevant time period. Although that employee was subject to a formal performance improvement plan corrective action as a result of his poor performance, Magee did not deduct three points from that employee's rate and rank score as he was required to do. Deducting the three points from that employee's

score would have placed him at the bottom of the rate and rank and required that he, not Walker, be terminated.  A reasonable jury could find that Magee contrived the rate and rank in order to justify his preconceived decision to terminate Walker because of her FMLA leave.

Turning next to Walker's age discrimination claim, the ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  See 29 U.S.C. § 623(a)(1).  To prevail on her age discrimination claim, Walker had to prove that she "(1) was a member of the protected class, i.e., was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) . . . . the employer retained a sufficiently younger similarly situated employee."  See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300-01 (3d Cir. 2004).  Ultimately, Walker had to prove that her age was the "but-for" cause of her termination.  See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015).

Verizon asserts that, with respect to Walker's age discrimination claim, "the sufficiency of the evidence issue boils down to whether the plaintiff introduced sufficient evidence to permit a finding that the defendant's proffered

reason was a 'pretext.'" Our Court of Appeals has held that the
plaintiff may prove pretext in one of two ways. First, the
plaintiff may "point to evidence that would allow a factfinder
to disbelieve the employer's reason for the adverse employment
action." See Willis, 808 F.3d at 644 (citing Fuentes, 32 F.3d
at 765). This evidence "must indicate 'such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons'
to satisfy the factfinder that the employer's actions could not
have been for nondiscriminatory reasons." See id. at 644-45.
Second, a plaintiff may prove that the employer's purported
reason is pretext for discrimination by "point[ing] to evidence
that would allow a factfinder to believe that an invidious
discriminatory reason was 'more likely than not a motivating or
determinative cause' of the employer's action." See id. at 645.

Here, there was sufficient evidence for a reasonable
jury to find that Walker was terminated because of her age.
Verizon has argued that Magee selected Walker for the reduction
in force because, despite being a good employee, she was the
weakest member on Magee's team. There was testimony that Magee
may have followed one of two different processes in making his
decision to terminate Walker. Magee testified that he made his
decision to terminate Walker during a phone call with Gross
before he completed the required rate and rank form. It was

-18-

reasonable for the jury to find pretext under these
circumstances.  See id. at 644-45.

     The second possible method for terminating Walker was
the rate and rank protocol.  The rate and rank was comprised
entirely of subjective factors.  These included the employee's
2013 and 2014 performance evaluation scores, primary skills,
technical knowledge, "credo", corrective action, and any other
relevant factors.  All of these metrics were based on Magee's
subjective view of Walker, rather than objective metrics of her
performance such as her proficiency at certain skills or the
number of tasks completed.  Moreover, Magee did not complete the
rate and rank according to the instructions.  If he had, a
substantially younger employee would have been terminated.  That
employee had scored only two points better than Walker on the
rate and rank, yet should have received one point less than
Walker because he was subject to a formal disciplinary program
for poor performance.  Verizon's decision to terminate Walker
was fraught with "weaknesses, implausibilities, inconsistencies,
incoherencies, [and] contradictions."  See id.  For all of these
reasons, there was more than sufficient evidence from which a

jury could determine that the employer's purported

non-discriminatory reason for firing Walker was mere pretext.[11]

There was more than sufficient evidence from which the

jury could have reasonable decided to reject Verizon's purported

legitimate, non-discriminatory reasons for firing Walker.  We

will not second-guess the jury's decision.  Walker presented

sufficient evidence from which a reasonable jury could find that

Verizon selected her for termination because of her age.

III.

Verizon, in the alternative, seeks a new trial under

Rule 59 of the Federal Rules of Civil Procedure.  It contends

that it is entitled to a new trial for two reasons.  First, it

claims that even if the evidence was legally sufficient to

support a verdict, the weight of the evidence was contrary to

the verdict.  Second, Verizon maintains that the jury did not

understand the jury instructions on elements of the age

discrimination and FMLA retaliation causes of action.[12]

---

11.  This is also true with respect to Walker's FMLA retaliation
claim, which implicates the same telephone call between Magee
and Gross and the same rate and rank protocol.

12.  Verizon's objections to the jury instructions were limited
to a challenge to the inclusion of a charge on emotional
distress damages.  In addition, Verizon objected that the words
"if any" should be added to the damages questions on the verdict
sheet.  Verizon did not make any other objections to the jury
instructions or verdict sheet.

Rule 59 provides that "[t]he court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." See Fed. R. Civ. P. 59(a)(1)(A). Our Court of Appeals has "cautioned that a district court should grant a new trial on the basis that the verdict was contrary to the weight of the evidence 'only where a miscarriage of justice would result if the verdict were to stand.'" Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (quoting Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1352 (3d Cir. 1991)). In reviewing a Rule 59 motion for a new trial, unlike a Rule 50 motion for judgment as a matter of law, the court is not required to view the evidence in the light most favorable to the plaintiff. See Valentin v. Crozer-Chester Med. Ctr., 986 F. Supp. 292, 298 (E.D. Pa. 1997) (citing Magee v. Gen. Motors Corp., 213 F.2d 899, 900 (3d Cir. 1954)).

In our view, the weight of the evidence supports the jury's verdict that Verizon committed age discrimination and FMLA retaliation. No miscarriage of justice has occurred.

Verizon also argues that the jury was confused by the jury instructions because those instructions required it to decide whether Walker's taking of medical leave was a motivating factor with respect to the FMLA retaliation claim and whether Walker's age was a determinative factor with respect to the age

-21-

discrimination claim.[13]  Pointing to questions asked by the

jurors of the court concerning the motivating and determinative

---

13.  The court instructed the jury on age discrimination and
FMLA retaliation as follows:

> Ms. Walker, as previously noted, alleges
> Verizon discriminated against her because of
> her age.  To prevail on this claim,
> Ms. Walker must prove that Verizon
> intentionally discriminated against her by
> proving the following three elements:
>
> First, Verizon terminated Ms. Walker's
> employment;
>
> Second, that her age was a determinative
> factor in Verizon's decision to terminate
> her employment; and
>
> Third, that a substantially younger
> employee, or substantially younger
> employees, were retained for the job of
> engineering specialist.
>
> A determinative factor means that if not for
> Ms. Walker's age, her termination would not
> have occurred.
>
> Although Ms. Walker must prove that Verizon
> acted with the intent to discriminate, she
> is not required to prove direct evidence of
> intent, such as statements admitting
> discrimination.  Intentional discrimination
> may be inferred from the existence of other
> facts.
>
> Often, the state of mind, including intent,
> with which a party acts at any given time
> cannot be proved directly because one cannot
> read another person's mind and tell what he
> or she is thinking.  However, the state of
> mind of the relevant Verizon employees who
> were involved in terminating Ms. Walker can
> be proven indirectly from the surrounding

circumstances.  It is entirely up to you to decide what the evidence presented during this trial proves or fails to prove about the state of mind of the relevant Verizon employees.

Ms. Walker need not show that she was replaced in her position by a younger employee.  Rather, she must only prove that a substantially younger employee was retained as an engineering specialist.  In determining whether Ms. Walker has proven that a substantially younger employee was retained, you should use your good judgment and common sense. There is no magic formula as to what constitutes an employee substantially younger than Ms. Walker.

Verizon has presented evidence of a non-discriminatory reason for its decision to terminate Ms. Walker as part of the reduction in force.  If you disbelieve Verizon's explanation for its conduct, then you may, but need not, find that Ms. Walker has proven intentional discrimination.

In determining whether Verizon's stated reason for its actions was a pretext or excuse for discrimination, you may not question Verizon's business judgment.  You cannot find intentional discrimination simply because you disagree with the business judgment of Verizon or believe it is harsh or unreasonable.  You are not to consider Verizon's wisdom.  However, you may consider whether Verizon's reason is merely a cover-up for discrimination.

. . . .

Finally, <u>Ms. Walker alleges that Verizon retaliated against her for exercising her right to unpaid medical leave</u> under federal law when she had her shoulder operation in 2013.  To prevail on this claim, Ms. Walker must prove the following three elements:

First, that Ms. Walker requested medical leave.  Verizon concedes that Ms. Walker's request for medical was pursuant to federal law.

Two, that she was terminated after returning from leave; and

Three, that Ms. Walker's taking of leave was a motivating factor in Verizon's decision to terminate her employment as part of a reduction in force.

In showing that Ms. Walker's medical leave was a <u>motivating factor</u> for Verizon's action, Ms. Walker is not required to prove that the leave was the sole motivation, or even the primary motivation, for Verizon's decision.  Ms. Walker need only prove that her taking leave played a motivating part in Verizon's decision, even though other factors may also have motivated Verizon.

You must decide whether you find that Verizon's termination of Ms. Walker was motivated by both retaliatory and lawful reasons.  Ms. Walker is not entitled to prevail if Verizon proves by a preponderance of the evidence that Verizon would have treated Ms. Walker the same if she had not taken medical leave under the Family and Medical Leave Act.

(Emphasis added).  The court also explained the verdict form:

The verdict form, members of the jury, has a number of questions.  The first one is, "Has Suzette Walker proven her age was a determinative factor in Verizon's decision to terminate her employment?"  You will then have to check yes or no.  There's a spot under the question for you to answer yes or no.

. . . .

-24-

factor instructions, Verizon now contends that those questions
were so confusing that a new trial is warranted.

First, the jury asked the court:

In jury instruction booklet on pg 18 line 50
can you explain what "motivated by both
retaliatory and lawful reasons" mean?  What
does lawful reasons mean?  Did it mean
unlawful reasons?

In response, the court instructed the jury that:

Lawful reason does not mean unlawful reason.
It means lawful reason, as we said.  It was
not -- it's not a typo.  Now with respect to
your other question, lawful reason means any
reason presented in the evidence for
selecting Ms. Walker for the RIF except for
her age, except for her asking for a
modified work schedule, and except for
taking MF -- FMLA medical leave.

Neither party objected to the court's response to this question
from the jury.  After the court provided this response, the jury
did not ask any further questions about this portion of the jury
instructions.[14]

---

There is then question 3 which says, "Has
Suzette Walker proven that her use of
medical leave was a motivating factor in
Verizon's decision to terminate her
employment?"  You have to answer yes or no.

14.  The jury had previously asked:

If an employee has not had enough time to
fully integrate into a new job, and this
employee was out on FMLA leave, does this
allow them to be less capable at their job

Second, the jury asked the court: "Can there be more than one determinative factor?" The court informed the jury, "The answer is yes." At the time, counsel for Verizon objected to this answer solely on the ground that she erroneously believed that there could only be one determinative factor.[15] This was, of course, wrong. See Scanlon v. Jeanes Hosp., 319 F. App'x 151, 155 (3d Cir. 2009) (citing Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir. 1995)). Verizon never objected that the determinative factor instruction was confusing and did not request that the court provide any further explanation of the determinative factor element of the age discrimination claim.

As stated, Verizon did not object that the court's answers were confusing in response to any questions asked by the jury. In fact, Verizon now concedes that the jury instructions and the court's responses to any jury questions about those

---

and keep it over someone else that is
determined more capable?

The court responded "You're just going to have to refer to the evidence and the charge which I have given you." The parties did not object to this response. Although Verizon now claims that this question demonstrates that the jury was confused about the FMLA instruction, Verizon does not argue that the court's response to this instruction was incorrect.

15. Counsel stated: "I just wanted to place on the record that it is my understanding of the law that there is only one determinative factor. There can be several contributing factors, but there can only -- and motivating factors."

instructions were "literally correct." Yet, Verizon attempts to raise an after-the-fact challenge to those instructions on the ground that, while legally correct, they were nevertheless confusing. This argument is totally without merit. The court's instructions to the jury and clarifying responses to answers posed by the jury were correct and clear. Further, it is well-established that the jury is presumed to follow the court's instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000); Zafiro v. United States, 506 U.S. 534, 540-41 (1993). Verizon simply has not met its burden to show that the verdict resulted in manifest errors of law or fact.

IV.

Next, we consider the motion of Walker for prejudgment interest on her back pay award and for liquidated damages under the FMLA.

We begin by calculating the prejudgment interest owed by Verizon to Walker on the $188,000 back pay damages awarded by the jury. In addition to owing back pay damages, an employer that violates the FMLA must pay interest on the back pay. See 29 U.S.C. § 2617(a)(1)(A)(i)-(ii). The prejudgment interest rate to be applied is left to the discretion of the court. See Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986). Prejudgment interest "serves to compensate a plaintiff for the loss of the use of money that the plaintiff

otherwise would have earned had [she] not been unjustly discharged." Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995). This accounts not only for lost accrual of interest on money saved but also the inability to use the salary for basic living expenses during that time period. Our Court of Appeals has stated that "[t]o fulfill this [make-whole] purpose, prejudgment interest should be 'given in response to considerations of fairness [and] denied when its exaction would be inequitable.'" Id. (quoting Bd. of Comm'rs of Jackson Cty. v. United States, 308 U.S. 343, 352 (1939)).

Verizon urges the court to apply the post-judgment interest rate set forth in 28 U.S.C. § 1961, which equals the Federal Reserve "weekly average 1-year constant maturity Treasury yield." See 28 U.S.C. § 1961(a). We note that "[a]lthough a court 'may' use the post-judgment standards of 28 U.S.C. § 1961(a), . . . it is not compelled to do so." Taxman v. Bd. of Educ. of Twp. of Piscataway, 91 F.3d 1547, 1566 (3d Cir. 1996). We find that the simple federal prime interest rate better serves the purpose of providing prejudgment interest. That interest rate was three percent in 2015 and 2016, and it was four percent in 2017. While the Treasury interest rate might account for lost investment, it certainly does not account for the Walker's inability to utilize these

funds in daily life.  Moreover, the three and four percent interest rates are not unreasonable.

The parties agree that the $188,000 back pay award should be apportioned as follows:  (1) $57,824 in the thirty-two weeks after she was fired in 2015; (2) $94,000 in the fifty-two weeks of 2016; and (3) $36,154 in the twenty weeks before the verdict in 2017.  The three percent interest on $57,824 in 2015 is $1,734.72.  As for 2016, the three percent interest on $94,000 in 2016 is $2,820.  Finally, in 2017, the four percent interest on $36,154 is $1,446.16.  Thus, the total prejudgment interest owed by Verizon on the $188,000 back pay award is $6,000.88.

Next, we calculate liquidated damages.  An employer which violates the FMLA is responsible for liquidated damages in an amount equal and in addition to the sum of the back pay damages and the prejudgment interest.  See 29 U.S.C. § 2617(a)(1)(A).  The court must award liquidated damages unless the employer "proves to the satisfaction of the court that the act or omission which violated" the FMLA "was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of" the FMLA.  See id.  If the employer proves as much, the "court may, in the discretion of the court, reduce the amount of the liability."  Id.

Verizon argues that Walker has not demonstrated that its conduct was "egregious" or produced evidence of "affirmative, intentional bad faith conduct." It misconstrues the standard. The court must award liquidated damages unless the employer proves to the court that its conduct was in good faith or based upon reasonable grounds. See § 2617(a)(1)(A). Although Verizon attempts to characterize its conduct as in good faith and based upon reasonable grounds, Verizon's effort fails.[16]

Walker is entitled to liquidated damages of $194,000.88, equal to the sum of her $188,000 back pay award and $6,000.88 in prejudgment interest. This is, of course, in addition to the judgment already entered.

V.

Finally, Walker petitions for attorneys' fees and costs. The plaintiff, as the prevailing party, is entitled to an award of attorneys' fees and costs under the ADEA and the FMLA, and may also seek fees under the PHRA. See 29 U.S.C.

---

16. Verizon also argues that Walker is not entitled to relief because, during the trial, the court rejected her proposed instructions on ADEA liquidated damages. However, Walker now seeks liquidated damages and prejudgment interest under the FMLA, not the ADEA. As the defendant admits in its brief, the statute clearly provides that FMLA liquidated damages and prejudgment interest are a matter for the court, not the jury. See § 2617(a)(1)(A)(iii).

§ 626(b) (citing 29 U.S.C. § 216(b)); 29 U.S.C. § 2617(a)(3);
43 Pa. Stat. § 962(c)(4)(c.2).

Attorney's fees are calculated by the "lodestar"
method.  See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.
1990).  Under the lodestar method, we multiply the number of
hours reasonably expended on the case by the reasonable hourly
rate.  See id.  Our Court of Appeals has held that "the
community billing rate charged by attorneys of equivalent skill
and experience performing work of similar complexity, rather
than the firm's billing rate, is the appropriate hourly rate for
computing the lodestar."  Student Pub. Interest Research Grp. of
N.J., Inc. v. AT&T Bell Labs., 842 F.2d 1436, 1450 (3d Cir.
1988).

The party seeking attorney's fees bears the burden of
proving that its request for attorney's fees is reasonable.  See
Rode, 892 F.2d at 1183.  It does so by submitting evidence of
the hours worked, including time spent during administrative
proceedings.  See Sullivan v. Hudson, 490 U.S. 877, 889-90
(1989).  The court will exclude hours "that are not reasonably
expended" because they are "excessive, redundant, [ ] otherwise
unnecessary," or not properly documented.  See Rode, 892 F.2d at
1183.

The prevailing party must also submit evidence of the
prevailing market billing rate.  See id. (citing Blum v.

-31-

Stenson, 465 U.S. 886, 895 (1984)).  In determining the
prevailing market rate, the court will "assess the experience
and skill of the prevailing party's attorneys and compare their
rates to the rates prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience,
and reputation."  See id.  "To inform and assist the court in
the exercise of its discretion, the burden is on the fee
applicant to produce satisfactory evidence -- in addition to the
attorney's own affidavits -- that the requested rates are in
line with those prevailing in the community for similar services
by lawyers of reasonably comparable skill, experience and
reputation."  Blum, 465 U.S. at 895 n.11.  The prevailing party
may rely on affidavits submitted by other attorneys with
personal knowledge of the community market rate.  See Rode,
892 F.2d at 1184.

　　　After calculating the lodestar amount by multiplying
the billing rate times the hours worked, the court retains
discretion to adjust the lodestar amount if it determines that
"the lodestar is not reasonable in light of the results
obtained."  See id. at 1183.

　　　Here, the plaintiff seeks attorneys' fees for lead
counsel, Christine E. Burke, and deposition counsel, Jonathan W.

Chase.[17]  The plaintiff has submitted the affidavits of Ms. Burke

and Mr. Chase, as well as affidavits from several other

Philadelphia employment law practitioners attesting to the

reasonableness of the suggested billing rates.  The plaintiff

has also provided detailed billing records, describing the

amount of time spent on each of the tasks performed in relation

to this litigation.

As lead counsel throughout the entire case, Ms. Burke

expended 441.8 hours on behalf of the plaintiff.[18]  Ms. Burke is

a partner at the law firm Karpf, Karpf & Cerutti, P.C. where she

oversees the litigation associates in all of the firm's

employment matters.  She is a successful and very experienced

litigator, with expertise in employment law.  She has worked on

hundreds of state and federal employment litigation matters.

Her hourly rate was $350 per hour.  This hourly rate is

reasonable.

Mr. Chase appeared on behalf of the plaintiff at her

deposition and the deposition of her husband, Eric Walker.  He

expended 9.9 hours in this case.  Mr. Chase was admitted to

practice law in 2011 and has appeared in many employment matters

---

17.  The plaintiff is not seeking compensation for the time
spent by paralegals on this case.

18.  In her brief, the plaintiff claims that Ms. Burke spent
451.7 hours on this action.  According to the billing records
submitted by the plaintiff, 451.7 hours is the total of the
9.9 hours spent by Mr. Chase and 441.8 hours spent by Ms. Burke.

in state and federal court. He was employed by Karpf, Karpf & Cerutti, P.C. from 2015 to 2016 and currently works for Kraemer, Manes & Associates, LLC, where he focuses on employment litigation. Mr. Chase's hourly rate was $285. This sum is also reasonable.

The hours worked by counsel are also reasonable. Ms. Burke spent 441.8 hours participating in every stage of this case, including the EEOC proceedings, discovery, depositions, motion practice, pre-trial filings, and trial. Discovery was extensive and active. It involved over 5,000 documents, numerous depositions, and many filings with the court. In addition, Mr. Chase spent a total of 9.9 hours appearing at and preparing for the depositions of the plaintiff and her husband.

We multiply the number of hours worked by each individual by his or her hourly rate to calculate the individual fees. We next add together all of those individual fees. The result is the lodestar amount, $157,451.50 representing $154,630 as to Ms. Burke and $2,821.50 as to Mr. Chase.

Finally, Verizon seeks a reduction in the attorneys' fees award because Walker abandoned her race discrimination and disability discrimination claims before the trial and did not obtain a favorable verdict on her disability retaliation claim. In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court explained that it is within the discretion of the district court

to reduce an award of attorney's fees with respect to claims that the plaintiff did not pursue or obtain a favorable verdict:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

See id. at 436-37.

The plaintiff brought five substantive claims for relief in this action: (1) age discrimination; (2) FMLA retaliation; (3) disability relation; (4) disability discrimination; and (5) race discrimination. She was successful on two of those claims -- age discrimination and FMLA retaliation. She also sought punitive damages, which the court refused to submit to the jury. We recognize that much of the work done by counsel in preparation for the withdrawn or unsuccessful claim overlaps with the work done on the age discrimination and FMLA retaliation claims. The defendant asks us to reduce the attorneys' fee award to $133,231.50. This reduced sum is appropriate under the circumstances and reasonable.

Walker has also submitted a supplemental petition seeking attorney's fees for the time spent briefing the post-trial motions and fee petitions. The prevailing party is

entitled to recover a reasonable fee for the preparation of post-trial motions and fee petitions. See Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J., 297 F.3d 253, 268 (3d Cir. 2002); Maldonado v. Houstoun, 256 F.3d 181, 188 (3d Cir. 2001); Prandini v. Nat'l Tea Co., 585 F.2d 47, 54 (3d Cir. 1978). Verizon has not filed any responsive brief in opposition to Walker's supplemental petition. Counsel for Walker seeks to be compensated for 57.5 hours of work on post-trial motions and fee petitions at a rate of $350 per hour. For the reasons already explained above, the hourly compensation rate is reasonable. Likewise, it was reasonable for counsel to spend 57.5 hours preparing briefs in support of and in opposition to the numerous post-trial motions and fee petitions filed in this action. As such, we will award $20,125 in supplemental fees to Walker.

Finally, we turn to the issue of costs. As explained above, the prevailing plaintiff is entitled to recover costs under the ADEA and the FMLA. The plaintiff is entitled to an award of $6,213.07 in costs.[19] This includes $400 in filing fees, $294.56 for medical records, $2,940 for the depositions, $795.60 for copies of the trial transcripts, $1,047.48 in other copying costs, $133.23 in postage and delivery fees, $395.04 in costs for travel to court appearances and depositions, and

_____

19. In its responsive brief, Verizon concedes that Walker is entitled to $6,213.07 in costs.

$207.16 for trial demonstratives.  All of these costs are reasonable.

In sum, we will award the plaintiff $153,356.50 in attorney's fees and $6,213.07 in costs, for a total of $159,569.57.

## VI.

Accordingly, the motions of defendant Verizon Pennsylvania, LLC for judgment as a matter of law and a new trial will be denied.  The motion of plaintiff Suzette Walker for liquidated damages and prejudgment interest on her back pay award will be granted.  The petition of Walker for counsel fees and costs will be granted in part and denied in part.  The supplemental petition of Walker for attorney's fees will be granted.